## Staunton.

BIRMINGHAM v. CHESAPEAKE & OHIO RAILWAY CO.

SEPTEMBER 20, 1900.

Absent, Riely, J.

1. STATUTE OF LIMITATIONS—*Personal Injury—Action in Form ex Contractu.*—The object of an action, and not its form, determines what act of limitation is applicable. If the thing complained of is an injury to the person, the limitation in *assumpsit* is the same as if the action were in form *ex delicto.*

2. STATUTE OF LIMITATIONS—*Revivable Actions—Personal Injuries.*—The object of the amendment to section 2906 of the Code made by the act of January 29, 1894, was to give the right of revival in cases where the plaintiff in actions for personal injuries died pending the action, without regard to .the cause of death, and not to make all actions for personal injuries revivable.

3. ACTION FOR PERSONAL INJURY—*Incidental Damages—Death of Plaintiff Before Action—Statute of Limitations.*—A claim for indirect and incidental damages to a plaintiff's estate, arising from an injury purely personal in its nature, does not cause the action brought to. recover for such injuries, to survive.

Error to a judgment of the Circuit Court of Botetourt county, rendered October 24, 1899, in an action of assumpsit, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The case, as stated in the petition for a writ of error, is as follows:

Statement.

"About the 1st of December, 1897, Mrs. Birmingham bought a ticket at Buchanan, and took the train about sundown, accompanied by four small children, and some luggage. She transferred at Clifton Forge to the main line of defendant's road, and continued her trip to West Virginia. Near two o'clock, after midnight, the conductor came through the coach on which she was riding and told her that the next stop would be at Thurmond, where she would have to transfer to the Loup Creek Branch road, on which was her destination, Harvey Station. In a few moments the whistle blew, and presently the train stopped; she waited a reasonable time for the conductor to come and aid her in alighting with her children and luggage   *   *   *   ; and he failing to come, and uneasy lest the train should start again, she waked up the children, who were all asleep, and proceeded as best she could to get off, without assistance. It was very cold, and was raining hard. She found it very dark, and with difficulty let the children down, one at a time, to the ground, which she could not see. Finally, having handed her luggage down, with her infant in her right arm, she took hold of the railing and undertook to get down herself, when, owing to the fact that she could not tell accurately the distance to the ground, she wrenched and strained her left shoulder and back. There she remained in the rain for some minutes, not knowing where they were, when she saw the conductor and asked him where they were. To this he replied that they were at the tank. She asked him why he had not stopped at the station and let her off, to which he replied that he had to take on water and the train was late. She then asked him whether he couldn't help her to the station, and he told her that he hadn't time, and would have to leave with his train. She then trudged with the children and luggage for three hundred feet until she reached the station; terrified by the noise and confusion of yard engines running over the tracks on the station yard over which she had

to pass, and suffering great pain from the injuries received by her in alighting from the train.

"When she reached the station she was shown into the waiting-room by the night agent. She was wringing wet from the exposure, and very cold. She had to remain there for several hours to take the train on the Loup Creek Branch road. There was no fire in this room; and from this exposure and wetting and cold she contracted a severe malady in her face and head, the result of which was that she had to have every tooth in her mouth extracted, and has suffered greatly with her shoulder and back ever since; whereas, prior thereto, she was a vigorous, strong woman, of the age of 29 years."

Mrs. Birmingham returned to Virginia in February, 1899, and instituted this action.

The defendant pleaded the act of limitation of one year, to which plea the paintiff demurred. The court overruled the demurrer, and entered judgment for the defendant.

*Glasgow & Woodson*, for the plaintiff in error.

*R. L. Parrish & Son*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This is an action of trespass on the case in assumpsit, brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant.

It appears that suit was not brought within one year from the time the cause of action arose, and that the defendant, in addition to the general issue, filed its plea of the statute of limitations, which was sustained, and judgment given accordingly.

It is contended that the one year statute of limitations does not apply; that this is an action *ex contractu*, brought to recover

damages for the failure of the defendant to safely transport the
plaintiff over its railroad from Buchanan, Va., to Harvey, W.
Va., and that it is governed by section 2920 of the Code, which
prescribes a limitation of three years upon all contracts, except
those specifically mentioned therein, and as to which some other
limitation is provided by said section.

This position is not tenable. The limitation is not deter-
mined by the form of action, but by its object. If the thing
complained of is an injury to the person, the limitation in as-
sumpsit is the same as if the action were in form *ex delicto.*
"Whenever the injury is merely personal, whether resulting
from breach of contract or from tort, the maxim, *actio personalis
moritur cum persona*, prevails." *Grubb* v. *Sult*, 32 Gratt. 203.

The object of the suit at bar being to recover damage for
personal injuries alleged to have been sustained by the plaintiff,
the limitation in tort actions is applicable.

It is further contended that, even if this be regarded and
treated as a tort action, it would not be barred in one year; that
under the law, as it is now, the limitation upon such an action is
five years. Prior to January 29, 1894, this action, being to
recover damages for personal injuries, would have been barred,
unless the suit had been brought within one year from the time
the injury complained of was inflicted. *Anderson* v. *Hygeia
Hotel Co.*, 92 Va. 687.

By an act approved January 29, 1894, the Legislature
amended and re-enacted section 2906 of the Code so as to make
it read as follows:

"*When Right of Action Not to Determine, nor Action when Brought
to Abate.*—The right of action under sections 2902 and 2903 shall not
determine, nor the action when brought, abate by the death of the
defendant, or the dissolution of the corporation, when a corporation is
the defendant; and where an action is brought by a party injured, for
damages caused by the wrongful act, neglect, or default of any person
or corporation, and the party injured dies pending the action, the action
shall not abate by reason of his death, but his death being suggested, it

may be revived in the name of his personal representative." (Acts 1893-'4, page 83.)

The question presented involves a construction of the statute quoted, it being contended that this amendment makes all actions for personal injuries revivable, and, therefore, under the provisions of section 2927, the period of limitations to such actions is extended to five years.

The amendment in question is somewhat obscure. The language, however, does not warrant the conclusion that the intention was to make such a radical change in the law as that suggested by the present contention. The object intended to be accomplished was, we think, to give the right of revival in cases where the plaintiff died pending the action, without regard to the cause of death. Before the amendment, an action to recover damages for personal injuries could not be revived except in those cases where the plaintiff died as a result of the injuries complained of; whereas, under the law as amended, if the plaintiff die, pending the action, no matter from what cause, the action may be revived. The amendment was not intended to change or affect the period of limitations to actions for personal injuries, and such actions must, as heretofore, be brought within one year next after the right to bring the same shall have accrued.

It is further suggested that special damages being laid in the declaration is sufficient to cause the action to survive. The special damage relied on is one hundred dollars alleged to have been paid out on account of the injuries sustained by the plaintiff. Such a claim for indirect and incidental damages to the plaintiff's estate, arising from an injury purely personal in its nature, does not cause the action, brought to recover for such injuries, to survive. *Mumpower* v. *City of Bristol,* 94 Va. 737.

For these reasons, the judgment of the Circuit Court must be affirmed.

*Affirmed.*