John H. ROWE, Jr., Administrator of the Estate of Larry Mitchell Rowe, Deceased, John H. Rowe, Jr., Jerry Rowe, under 21 years through his father and next friend, John H. Rowe, Jr., and Lloyd G. Rowe, Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.

No. 12721.

United States Court of Appeals Fourth Circuit.

Argued Dec. 4, 1968.

Decided Jan. 26, 1970.

See also 4 Cir., 375 F.2d 215.

Sidney H. Kelsey, Norfolk, Va. (Kelsey, Owens & Sanderlin, Norfolk, Va., on brief), for appellants.

Guilford D. Ware, Norfolk, Va. (Crenshaw, Ware & Johnson, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, BOREMAN and WINTER, Circuit Judges.

BOREMAN, Circuit Judge:

Challenged on appeal in this diversity action is the entry of judgment for the defendant upon its motion to dismiss after denying the motion of plaintiffs for leave to file an amended or supplemental complaint. For an understanding of the questions presented it seems necessary to narrate certain facts.

The plaintiffs are John H. Rowe, Jr., individually and as administrator of the

estate of Larry Mitchell Rowe, Jerry Rowe, an infant who sues through his father and next friend, John H. Rowe, Jr., and Lloyd G. Rowe.

On August 23, 1963, in an action then pending in the district court, the plaintiffs secured judgments in varying amounts aggregating $93,250 against Miles S. Brooks and Frank C. Carr, trading as Williamsburg Sporting Goods and Hobby Shop, and against two other defendants, William Hodge and Dallas Hodge, for damages arising from a boating accident in which Larry Rowe was killed and the other plaintiffs sustained personal injuries. United States Fidelity and Guaranty Company (hereafter USF&G), the defendant below and appellee here, was the liability insurance carrier for Brooks and Carr under a policy providing coverage up to a limit of $50,000. Another such policy with like limit had been issued to one William Hodge.

After the judgments had been obtained against the insureds in the two policies, USF&G instituted an interpleader action in which it was subsequently determined that USF&G was liable only under the Brooks and Carr policy and not under the Hodge policy. Following that determination, USF&G paid to the plaintiffs the entire policy limit of $50,000 under the Brooks and Carr policy. However, on July 22, 1964, the present action was instituted and on August 19, 1964, USF&G filed its answer to the complaint. Upon motion of USF&G this action was stayed and the plaintiffs were enjoined from instituting or prosecuting any further legal proceedings arising out of the boating accident until further order of the court. On November 27, 1964, the stay and injunction orders were vacated.

In the instant case the plaintiffs seek to recover from the insurance carrier, USF&G, the excess of their judgments over and above the coverage limit of $50,000. The thrust of the complaint is that USF&G failed and refused, in bad faith, to enter into settlement negotiations with the plaintiffs as to their claims against Brooks and Carr and to settle the claims, at amounts acceptable to plaintiffs, within the policy limits.

Plaintiffs alleged that they sue USF&G as judgment creditors of the insureds and as third-party beneficiaries under the policy, claiming benefits and rights flowing to them by virtue of § 55–22, Va.Code 1950, as amended;[1] also, that they have the right to proceed as judgment creditors, directly against the insurance carrier, pursuant to § 38.1–380, Va.Code 1950, as amended.[2]

A pretrial conference was held on August 11, 1967, at which the district court

1. § 55–22. When person not a party, etc., may take or sue under instrument.— An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well. (Code 1919, § 5143.)

2. This section of the statute, in allegedly pertinent part, is as follows:

§ 38.1–380. Required provisions as to insolvency or bankruptcy, and as to when action maintained against insurer.—No policy * * * shall be issued * * * in this State unless it contains in substance the following provisions * * *:

(1) * * *.

(2) A provision that in case execution on a judgment against the insured * * * shall be returned unsatisfied, then an action may be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under the policy or contract.

ordered a final pretrial conference on November 27, 1967, and set the case for trial on December 7, 1967. On August 23, 1967, USF&G filed a motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted, and more particularly for reasons as follows: that these plaintiffs cannot maintain this action directly against the insurer under § 55–22 or § 38.1–380, Va.Code 1950, as amended; that the cause of action sounds in tort and is not an action based upon an instrument; that the plaintiffs, as judgment creditors of an insured, are limited in their recovery to the terms of the policy and the limit of coverage of $50,-000 which had already been paid by USF&G.

On September 14, 1967, faced with a motion to dismiss their complaint, the plaintiffs asked leave under Rule 15(a) and (d) of the Federal Rules of Civil Procedure to amend and supplement their complaint by alleging that on or shortly after August 11, 1964, Frank C. Carr, an insured, individually and as a partner trading as Williamsburg Sporting Goods and Hobby Shop, made an oral assignment to the plaintiffs of rights against USF&G arising out of the insurer's negligence and bad faith in refusing and neglecting to settle the plaintiffs' claims against Carr and the partnership within policy limits. Made a part of the record on October 2, 1967, was an affidavit dated August 30, 1967, made by Frank C. Carr, which affirmed the alleged 1964 oral assignment to the plaintiffs. USF&G objected to the proposed amendment or supplement to the original complaint, asserting that the alleged oral assignment to the plaintiffs was made after August 11, 1964, at least twenty days following the filing of the original complaint on July 22, 1964; that such assignment was not a fact in existence at the time of the filing of the original complaint on July 22, 1964; that the proposed amendment or supplement would be prejudicial to the interests of the defendant.

On December 21, 1967, the district court filed a written opinion [3] in which it was held that plaintiffs' motion for leave to file the proffered amended or supplemental complaint should be denied, and that the defendant's motion to dismiss should be granted. A formal order to that effect was entered on April 17, 1968.

■ In disposing of the defendant's motion to dismiss the original complaint the district court held that the action *"as brought by the plaintiffs on July 22, 1964,* directly against the insurance company cannot be maintained in their status as judgment creditors or third-party beneficiaries under the provisions of either § 55–22 or § 38.1–380 of Va. Code 1950, as amended, and is an action reserved only to the insured." [4] For the reasons stated by the district court, we agree with this holding.

However, we would supplement the lower court's opinion by offering the following comment. The language of § 55–22, Va.Code 1950, as amended, as we construe it, makes it clear that a judgment creditor of an insured may bring an action under the statute only for the breach of covenant or promise which was made for his benefit in whole or in part. The promise of USF&G in the instant case, from which arose the duty which was allegedly breached, was made for the benefit of the insureds and not for the benefit of the plaintiffs since, in reality, it offered no benefits to plaintiffs except through its *breach.*[5] The

---

3. Rowe v. United States Fidelity and Guaranty Company (E.D.Va.1967).

4. On appeal the plaintiffs have apparently abandoned their contention below and as alleged in their complaint that their right to maintain the instant action derives

from § 38.1–380, Va.Code 1950, as amended.

5. See Seguros Tepeyac, S.A., Compania Mexicana, etc. v. Bostrom, 347 F.2d 168 (5 Cir. 1965); Tabben v. Ohio Casualty Ins. Co., 250 F.Supp. 853, and cases therein cited at 855–856 (E.D.Ky.1966);

cases cited by the plaintiffs in support of their contention to the contrary are inapposite and unpersuasive.[6]

In the recent case of Davis v. National Grange Ins. Co., 281 F.Supp. 998 (E.D. Va.1968), where the facts were somewhat similar to those in the instant case (except that there the insured and the parties injured by insured's negligence joined as plaintiffs against insurance company) the district court held that a judgment creditor of the insured could maintain this type of action against the judgment debtor's insurance carrier under § 55–22, Code of Va.1950, as amended, on the theory that the injured party was a beneficiary under the insurance policy and that the policy was made for his benefit. We do not find the reasoning in *Davis* to be persuasive. The plaintiffs in the instant case have received all that they were entitled to recover as third-party beneficiaries under the insurance policy, *i. e.*, the full measure of protection afforded by the policy within designated limits.

■ We next turn our attention to the assignment made by the insured, Frank C. Carr, to the plaintiffs since, if the present action is to be judicially cognizable at all it can be so only through that assignment. While rejecting plaintiffs' proposed amendments and granting defendant's motion to dismiss, the court, nevertheless, stated its conclusion that Carr's claim against the insurance carrier was assignable and that the amendments stated a cause of action.

At common law the assignability of a tort claim in Virginia was determined by its survivability. In re Funk, 2 F.Supp. 555, 559 (W.D.Va.1932). In Winston v. Gordon, 115 Va. 899, 80 S.E. 756 (1914), it was held that a right of action, to be survivable, must be based upon a wrong to property, real or personal, whether the wrong was tortious or arose from breach of contract, and injury must have been the direct result of the wrong. Claims based upon other tortious wrongs done to one's person or reputation[7] or which were purely personal and apart from injury to property resulting from tort or breach of contract or which were not the direct cause of the injury were not survivable. At page 763 the Court of Appeals quoted with approval from Graves on Pleading and stated:

" '\* \* \* Then what tort actions are assignable? The answer is: Such only as survive to or against the personal representative, if one of the original parties dies. Then what tort actions survive? The answer is: Those for wrong to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract. \* \* \*.' "

The Virginia court made the further comment:

"The statement of Mr. Graves must always be borne in mind, that actions are assignable which survive, and those which do not survive are not assignable."

The rule stated in *Winston* would not appear to be particularly complicated yet the application of the requirement of directness has caused some little confusion.[8]

Subsequent Virginia decisions have indicated general approval of the principles stated in Winston v. Gordon, *supra.* See Vance v. Maytag Sales Corp., 159 Va. 373, 165 S.E. 393 (1932); Cover v. Critcher, 143 Va. 357, 130 S.E. 238

---

Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1175–1177 (1954).

6. Moorman v. Nationwide Mutual Ins. Co., 207 Va. 244, 148 S.E.2d 874 (1966); Aetna Casualty & Surety Co. v. Price, 206 Va. 749, 146 S.E.2d 220 (1966); Storm v. Nationwide Mutual Ins. Co.,

199 Va. 130, 97 S.E.2d 759, 69 A.L.R. 2d 849 (1957).

7. For example, libel, slander, deceit, malicious prosecution, false arrest or imprisonment and alienation of affections.

8. *See*, Note, Assignability of a Tort Cause of Action in Virginia, 41 Va.L.Rev. 687 (1955).

(1925). These and other Virginia cases were analyzed, compared and discussed in Watson v. Daniel, 165 Va. 564, 183 S.E. 183 (1936).

The court in Watson, *supra,* 165 Va. 564, 183 S.E. 183 (1936), carried the doctrine of survival beyond the holding in Winston v. Gordon, *supra.* In *Watson* it was held that a cause of action of a father for damages on account of the loss of services of a minor child and expenditures made to treat the child for injuries resulting from the negligence of the defendant, was one for pecuniary loss suffered by the father's estate and one that could be brought under Va. Code, sec. 5385 by a personal representative in the event of the father's death. As the court there stated, "The precise point here involved has never been passed upon by this court." 183 S.E. at page 184.

This court had occasion to review the decisional and statutory law of Virginia and to consider the question of survivability in Barnes Coal Corp. v. Retail Merchants Ass'n, 128 F.2d 645 (4 Cir. 1942). For the court the late Chief Judge Parker stated, at page 650:

"The common law as to survival has been modified in Virginia by a statute, Code, sec. 5385, which provides: 'An action of trespass, or trespass on the case, may be maintained by or against a personal representative for the taking or carrying away any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent.'

"As said by this Court, speaking through Judge Northcott in Pathé Exchange v. Dalke, 4 Cir., 49 F.2d 161, 163, 'There can be no doubt that the purpose of the Virginia statute was remedial, and enlarged rather than restricted the classes of action, that survive the common law.' * * *. And as a result of the statute and the decisions construing it, we think that the class of actions which survive in Virginia has been enlarged to include those which involve injury to a person in his property or business as distinguished from purely personal wrongs." [9]

The court below held that if the insurance carrier had within its grasp the opportunity to settle the claims of the injured plaintiffs with the property Carr had made available for that purpose through insurance, and the failure to settle was attributable to its negligence or bad faith, this is deemed to have been a "direct affectation" of Carr's property rights.

We think it reasonable to conclude that Carr's alleged cause of action against USF&G for failure to settle plaintiffs' claims within policy limits was survivable; that in the event of Carr's death the claim could have been prosecuted by Carr's personal representative; that Carr's estate would have been directly affected to the extent of $43,250, the difference between the policy limits and the amount of the plaintiffs' judgments; and that Carr's claim was assignable. As the district judge stated:

"It is now fully decided in Virginia that in some circumstances an insurance company may be sued when it refuses to settle a claim against its insured for an amount within the policy limits and a judgment in excess thereof is thereafter recovered against the insured. Basis for recovery against the insurer is bad faith in its negotiations with the claimant and therefore, by its nature, is an action

---

9. At the time of the institution of the instant action and the making of the oral assignment by Carr to plaintiffs of his claim against USF&G, Va.Code, sec. 5385 had been re-enacted in identical form as sec. 64–135 Code of Va. 1950, effective February 1, 1950. This section was later amended, effective October 1, 1968, and now appears as § 64.1–145, Va.Code 1950, as amended, and reads as follows:

An action at law for money damages may be maintained by or against a personal representative for the taking or carrying away of any goods or for the waste or destruction of, or damage to, any estate of or by his decedent.

which sounds in tort. The Aetna Casualty & Insurance Co. v. Price, 206 Va. 749, 146 S.E.2d 220 (1966)."

The plaintiffs contend that the refusal of the court below to permit the filing of the amended and supplemental complaint was an abuse of discretion. Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend his pleading by leave of court and leave shall be freely given when justice so requires. Rule 15(d) provides that upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented; further, that permission may be granted *even though the original pleading is defective in its statement of a claim for relief* or defense and, if the court deems it advisable, it shall order the adverse party to plead to the supplemental pleading at a specified time.

Rule 15(d) was amended, effective July 1, 1963, by adding the provision that permission to serve a supplemental pleading may be granted even though the original pleading is defective in its statement for relief.

The district court, indicating principal reliance upon Berssenbrugge v. Luce Mfg. Co., 30 F.Supp. 101 (W.D.Mo. 1939); and Chicago Grain Door Co. v. Chicago, B. & Q. R. Co., 137 F. 101 (C.C.N.D.Ill.1905), held:

"In the instant case to allow the plaintiffs to amend their complaint in September, 1967, under the guise of 'amending' or 'supplementing' would be of substantial prejudice to the defendant. The amended complaint is essentially another cause of action which may now be affected by other defenses." [10]

The cases cited by the district court were decided before the formulation and adoption of the Federal Rules in their present form. The court, in its opinion, referred to Rule 15(a) and (d) and relied upon a statement contained in *Berssenbrugge, supra,* which the court quoted from [11] as follows:

"It is quite clearly outlined by the authorities cited in Edmunds' Federal Rules of Civil Procedure, p. 725, note 433, that a plaintiff, who, at the time of filing original bill, had no cause of action, cannot by amended or supplemental bill introduce a cause of action thereafter accruing."

In further undertaking to interpret Rule 15(d) the district court stated:

"Nor do we think that the proffered amended complaint can be accepted as a supplemental pleading under Rule 15 (d). As stated in Berssenbrugge v. Luce Manufacturing Co., supra, 'an amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause.' And in Chicago Grain Door Co. v. Chicago, B. & Q. R. Co., et al., 137 F. 101 (C.C.N.D.Ill., 1905), the Court said: 'The limited purpose of a supplemental bill is to repair or add to a good original case, shown by an original bill, good or bad, either to supply defects sometimes existing when suit brought, but usually afterwards occurring, or to support, fortify or re-enforce.' "

An explication of Rule 15(d), both prior to and subsequent to the 1963 amendment, is found in 3 Moore's Federal Practice (2d ed.), ¶ 15.16. We quote from pages 1085 and 1086 as follows:

"Prior to the 1963 amendment to Rule 15(d), some cases had held that where the original complaint failed to state a claim upon which relief could be granted, leave to serve a supplemental complaint must be denied, because there was no proper claim before

---

10. Rowe v. United States Fidelity and Guaranty Co. (E.D.Va.1967).

11. 30 F.Supp. at 102.

the court to supplement. Other decisions had adopted a more liberal view, and did not require plaintiff to commence a new action when events subsequent to the original pleading made clear plaintiff's right to relief. The 1963 amendment adopted this latter view by adding to subdivision (d) what is now the sentence: 'Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.' Thus, the granting of leave is now clearly within the court's discretion regardless of the sufficiency of the original pleading, whether it is one setting forth a claim or a defense. Of course, one of the factors the court may take into consideration is whether the original pleading was defective, and in what manner."

At pages 1089, 1090, and 1091 of 3 Moore's Federal Practice we find further comments as follows:

"The decision to grant or deny leave to file a supplemental pleading is one for the discretion of the district court, and will not be disturbed on appeal except for abuse of discretion. The additional discretion confirmed to the district courts by the 1963 amendment should not be defeated by unnecessary restriction based on the view held by some state courts that a supplemental pleading cannot introduce a new 'cause of action.'

"Some decisions under Rule 15(d), before the 1963 amendment, took a restrictive view. Thus, an early decision held that plaintiff in a patent infringement action could not introduce, in a supplemental complaint, a claim based on infringement of an entirely different patent, the court saying that Rule 15(d) was not intended to broaden the rule theretofore followed.[12]

Other decisions, however, have taken a contrary view, holding that a supplemental complaint should be allowed in aid of economy and the speedy disposition of the controversy, if defendant is not prejudiced, as where its rights are as well preserved by trial on a supplemental complaint as by trial in a new action. These decisions seem preferable. While the matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading, the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance, but should only be a factor to be considered by the court in the exercise of its discretion, along with such factors as possible prejudice or laches; and, of course, a broad definition of 'cause of action' should be applied here, as elsewhere."

In the case before us the sole objective of the plaintiffs, in both the original complaint and the tendered amendment and supplement thereto, is to recover from USF&G the excess of their judgments over and above the policy limit of $50,000 because of the negligent and bad faith failure and refusal of USF&G to enter into settlement negotiations with plaintiffs and to settle their claims against Brooks and Carr within the policy limit. The one real issue for trial would be the negligence and bad faith of the defendant with respect to its failure and refusal to settle whether the plaintiffs sued as the insured's assignees of the policy or, if legally permissible, as third-party beneficiaries of the insurance contract and as judgment creditors of the named insured.

In refusing to permit the filing of the tendered supplemental complaint the district court concluded that significant factors to be considered in the exercise of its discretion were "timeliness, excuse for delay, and prejudice to the opposite party." While the court made the con-

12. Here the author cites in a footnote the case of Berssenbrugge v. Luce Mfg. Co., 30 F.Supp. 101 (W.D.Mo.1939), the "early decision" referred to in the text and upon which the district judge in the instant case relied so strongly in support of his conclusions.

clusory finding of "substantial prejudice" to the defendant, the only reason assigned to support the finding was that "the amended complaint is essentially another cause of action which may now be affected by other defenses." The court did not offer any explanation as to what the "other defenses" might be or what complications reasonably could be anticipated. As to the timeliness factor, the court stated:

"The plaintiffs have waited more than three years since the date of the alleged oral assignment to offer an amendment or to bring a new suit in the proper status of the plaintiffs as they found themselves after August 11, 1964. While there was an interlocutory injunction forbidding further suits and pleadings in this matter, issued in August, 1964, that injunction was vacated in November, 1964, and nearly three years have elapsed since that time without any further action either proposed by the plaintiffs in this suit or in a new suit."

As previously stated herein, in August 1964 the court granted an interlocutory injunction in this litigation forbidding further suits and pleadings and the injunction was vacated in November 1964. However, certain aspects of the litigation continued and no final disposition thereof was made until February 1967 when this court issued its decision in Rowe v. United States Fidelity and Guaranty Company, 375 F.2d 215. Up to that point the plaintiffs were insisting that they were entitled to insurance coverage to the extent of $100,000, that being the aggregate of the limits provided in the Brooks and Carr policy and the William Hodge policy. Their combined judgments reached a total of $93,250. This court determined that there was no liability on USF&G under the William Hodge policy and, therefore, it was not until 1967 that the plaintiffs found that their insurance protection had been reduced from the expected coverage of $100,000 to a limit of $50,000. Following the 1967 disposition of the appeal by this court, the district court, upon request of the plaintiffs, ordered this action to proceed. The defendant, USF&G, filed its motion to dismiss, asserting that no cause of action was stated by the original complaint.

Apparently, the district court was of the opinion that the plaintiffs could have instituted a new action based upon the assignment to them of the insured's rights under the Brooks and Carr policy. Instead, the plaintiffs moved for permission to file their tendered amended and supplemental complaint, claiming in addition to those rights asserted in the original complaint further rights pursuant to the assignment of the Brooks and Carr policy. The matters stated in the supplemental complaint bore a direct relation to the claim asserted in the original complaint; namely, USF&G's failure to settle plaintiffs' claims within the policy limit. Under all of the circumstances, we conclude that the district court abused its discretion in denying plaintiffs' request for permission to file their proposed amended and supplemental complaint. We are not persuaded that the defendant would have been prejudiced thereby. On the contrary we have no reason to think that its rights will not be as well preserved by trial on the supplemental complaint as by trial in a new action which might have been instituted following the assignment. The decision below will be affirmed in part, reversed in part, and the case will be remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.